AYRES, Judge.
Plaintiff instituted this action to recover the maximum statutory benefits payable under the Workmen’s Compensation Statute (LSA-R.S. 23:1021 et seq.) as provided for total and permanent disability, due to accidental injuries allegedly sustained August 7, 1956, while employed by the Arkansas-Louisiana Gas Company at its plant at Spencer, Union Parish, Louisiana. The defendant is the employer’s compensation insurance carrier.
From a judgment in plaintiff’s favor, defendant has appealed.
The question for determination is one of fact. The facts of plaintiff’s employment and rate of wage and compensation and of his total and permanent disability are either conceded or have been established by evidence to such a degree of certainty as to eliminate any peradventure of a reasonable doubt.
There remains for resolution the one and only question of whether plaintiff has established that he sustained accidental injuries while in the employ of the Arkansas-Louisiana Gas Company and while discharging and performing the duties of his employment. The facts pertaining to or having some bearing on this issue may be briefly reviewed. Plaintiff had been in the employ of the Arkansas-Louisiana Gas Company for approximately 10 years. While working in the employer’s pipe yard where pipe was being prepared for use in a welded line through a process of beveling, plaintiff, on picking up an oxygen or acetylene gas tank weighing approximately 150 pounds, experienced a catch or pull or strain in his back, accompanied by pain, and after walking some 30 or 40 feet in carrying.this tank to the beveling machine to replace an empty tank, plaintiff bent over and dropped the tank and was injured.
*361 Defendant contends there is no evidence of this occurrence or accident other than plaintiff’s own testimony and that he is not sufficiently corroborated by facts and circumstances so as to establish the occurrence of the same beyond a mere possibility and not to that degree of certainty as required by law. We think, however, the evidence preponderates to the contrary. Plaintiff says he told two fellow employees on the afternoon of the accident that he hurt his back. Louie Tucker, one of these, corroborates plaintiff when he testified:
“Well, I was on one pipe rack helping one beveling machine, helping on it and I happened to look across on the other rack and I saw him (plaintiff) pick up an oxygen bottle (tank) and he went probably thirty or forty feet with it and dropped it and he sorta stooped over and I thought he had got too hot, it had got awfully hot and after a while I went over there and asked him what was the trouble and he said he must have hurt his back, his back hurt him”.
The other fellow employee, T. T. Gray, recalled a conversation with plaintiff as plaintiff came by the beveling machine with the tank. The witness admonished plaintiff about carrying such a load without assistance. Because of the noise made by the machine, the witness did not grasp or understand what plaintiff said.
The next morning following the accident, plaintiff was unable to report for work, whereupon, according to his and his wife’s testimony, she phoned his foreman and advised him of the fact of plaintiff’s injury. A few days later the foreman called by a store operated by plaintiff’s wife to obtain plaintiff’s signature to the payroll record, as it was the custom and practice that each of the employees sign the payroll. On that occasion the wife and daughter testified they were present and heard the plaintiff inform Milford, the foreman, that he had hurt himself.
Plaintiff and other employees residing in Farmerville and vicinity were transported to and from the place of employment, some 18 miles distant, by bus. Plaintiff alleged, and so testified, that the accident occurred only a short time prior to the end of the day’s work. On returning to Farmerville, plaintiff was observed walking away from the bus by another fellow employee, who, from plaintiff’s manner of walking, observed that something was evidently wrong with plaintiff, about which the fellow employee inquired at the time.
After reaching Farmerville, plaintiff went the same afternoon of the accident to the Norris-Booth Clinic and saw Dr. Booth concerning his back. Among the complaints, Dr. Booth reported that plaintiff complained that riding in a car caused him considerable pain. Later, plaintiff reported to the Green Clinic at Ruston, Louisiana, where he was first examined and treated by Dr. Henry Roane and later by Dr. L. C. Bleich, the latter ordering plaintiff to be hospitalized from August 27 to August 31, 1956, followed by treatment as an out-patient since that time. Due to an accident sustained by Dr. Roane, his testimony could not be secured.
Dr. Bleich reported plaintiff’s condition, as he observed him during his initial treatment and subsequently on September 17 and 25 and November 30, 1956, as a herniated intervertebral disc with definite evidence of a low back derangement, possibly from more than one source but particularly from a deranged disc. Under this condition, plaintiff suffered the usual pain and discomfort, muscle spasms and tenderness, back and sciatic pain, and limitation of motion of the spine and of leg raising usually accompanying such condition. On a test being made, he found the left leg could only be raised 20 degrees from horizontal and the right leg only 45 degrees.
Plaintiff was referred by defendant’s counsel to Dr. Alfons R. Altenberg, an orthopedic surgeon, of Monroe, Louisiana, *362 who made an examination December 10, 1956, and from which he made a diagnosis that plaintiff was suffering from a ruptured lumbar intervertebral disc. In his testimony the doctor says that plaintiff’s pain was quite severe and that he was totally disabled, on the basis of his last examination, from performing heavy manual labor such as he was doing at the time he was injured, and he thought at the time that surgical intervention was advisable, as, without surgery, there could be, usually, no practical recovery in a case as severe as this one.
While some of defendant’s witnesses, such as the foreman, either deny or do not recall plaintiff’s report or complaints as to his injury, yet the testimony, as a whole, is convincing that plaintiff did sustain an accident as alleged and that from such accident he sustained injuries from which he immediately became disabled.
Defendant contends that plaintiff may have been injured in some other accident not occurring upon the employer’s premises or while he was not engaged in the performance of his employment but elsewhere. The sequence of events refutes this contention. Plaintiff left the place of employment on a bus furnished for his transportation to Farmerville, where he immediately went to a physician for examination and treatment. There is no evidence whatsoever that would lead to the slightest suspicion that an accident occurred after plaintiff left the bus in Farmerville prior to his engagement with Dr. Booth on the same afternoon. The interval of time intervening is so brief as to practically eliminate any possibility of an accident after plaintiff left his work and reported to a doctor. Had an accident occurred in that brief space of time and while plaintiff was going from the bus stop to the doctor’s office, it appears there would have been little difficulty in establishing that fact.
There is no question but what plaintiff was fully able to and did discharge his duties in the performance of hard manual labor to and until almost the closing of the work day of August 7, 1956, at which time he claims to have sustained accidental injuries. The record further establishes beyond any reasonable doubt and certainly by a preponderance of the evidence that from that day forward until this time plaintiff has been and is totally incapacitated from the performance of his work or work of the same or similar character.
The trial court, in a written opinion, most carefully and painstakingly analyzed the evidence and concluded that plaintiff had sufficiently established the occurrence of the accident and his injuries and disability resulting therefrom. Notwithstanding the excellent, thorough and most exhaustive brief filed by defendant’s most learned counsel, we are not convinced that His Honor committed any manifest or reversible error; on the contrary, the evidence convinces us that the judgment appealed is clearly correct, except that the judgment should have been limited to the weekly compensation payable to the period of plaintiff’s disability, beginning August 7, 1956, not, however, to exceed a total of 400 weeks, and that the witness fee of Dr. Alfons R. Altenberg, taxed as costs, should have been fixed as required by the statute.
Accordingly, the judgment should be, and it is hereby, amended so as to limit the payment of the weekly compensation to the period of plaintiff’s disability, beginning August 7, 1956, not, however, exceeding a total of 400 weeks, and fixing the expert witness fee in the sum of $35, and, as thus amended, the judgment appealed is affirmed at appellant’s cost.
Amended and affirmed.